Mario Pittoni, J.
The plaintiff, Louis J. Eiso, (hereinafter called Eiso) has brought this action against Banco De Ponce (hereinafter called the Bank) to recover $15,000, the proceeds of a check drawn by Eiso to the order of Ponce Gas Works and cashed by the Bank. The cause of action is based on the alleged conversion by the Bank of the check and its proceeds. This case was tried before this court without a jury.
It appears that in February, 1953 Eiso discussed with Jose Tormos Vega, the general manager of Ponce Gas Works of Puerto Eico (hereinafter called Tormos), the possible expansion of Ponce Gas Works and Eiso’s possible investment therein. They also discussed certain negotiations for the purchase of machinery from Gas Machinery Co., and another, and negotiations for a loan of $150,000 from Standard Oil Co. Eiso says that he was willing to invest in the Gas Works if Standard Oil made the loan, but not otherwise.
*876 Biso claims that in March, 1953 Tormos told him that Q-as Machinery Co. wanted evidence that Ponce Q-as Works had the needed credit for a sale to it of machinery, and that at Tormos’ request Biso gave him a $10,000 check to the order of Gas Machinery Co. This check was to be exhibited by Tormos, but thereafter returned to Riso. Such a check was given to Tormos, but was never used and was returned to Riso.
Riso further claims that on April 1, 1953, Tormos said that the purchase of machinery had been agreed upon and asked Riso for a $15,000 check drawn to the order of Ponce Gas Works. This check was only to be exhibited to Gas Machinery Co., etc., as evidence of Gas Work’s credit. Tormos told Riso he would return the check to Riso after showing it to Gas Machinery Co. Thereupon Riso drew his $15,000 check to the order of Ponce Gas Works, and gave it, according to Riso, upon the express understanding that it was to be used solely for exhibition purposes. The complaint puts it: “as evidence of credit by Ponce Gas Works with whom said Combustion Engineering Co. and Gas Machinery Co. were negotiating ”.
Nonetheless, after certification and on April 6,1953, Tormos, as general manager of Ponce Gas Works, cashed the subject check at the Bank. He obtained in return two cashier’s checks totalling $15,000. One of the checks was for $10,000 to the order of Gas Machinery Co. The other, for $5,000, was to the order of Tormos. Both were paid.
At this time the subject check had no indorsement. Later, about April 13, 1953, the lack of indorsement was discovered. The evidence fails to establish to the court’s satisfaction that the Bank was ever apprised of or ever knew of any alleged restrictive purpose of the subject check. Riso says he told a Bank official; but the surrounding circumstances, including his attempts to communicate with Tormos concerning the check about that time, negate that testimony. At any rate, the subject check was returned to the Bank about April 22, 1953, and about April 28, 1953 the missing indorsement was obtained in Puerto Rico.
First, Riso has failed to prove by a preponderance of evidence that the claimed restriction by Riso was ever imposed on Tormos. In fact, the evidence tends to show that the check was to be used as Riso’s investment in certain enterprises with Tormos. The issue of fact regarding the alleged restriction is resolved against Riso and in favor of the Bank. On this ground the complaint can be and is dismissed.
However, there are other reasons to sustain the defendant Bank’s position. There is no evidence of any kind to establish *877 that the Bank had any notice of any restriction until after the subject check had been certified and cashed by Tormos. Then, too, the evidence is too flimsy to be believed that notice of any restriction was given to the Bank until long after the transaction involved. It should be noted that the complaint makes no mention of any alleged notice at any time to the Bank of any restrictive directions by Biso to Tormos. The subject check was indorsed on April 28, 1953, and the Bank was a holder in due course, especially since the court finds that at the time of the negotiation and indorsement the Bank “ had no notice of infirmity of the instrument or defect in the title of the person negotiating it ”. Tormos, who negotiated the check, was the general manager of the payee, Ponce Gas Works.
Another reason: The alleged restrictive agreement is not enforcible because, by Biso’s own testimony, it was for an illegal purpose and contrary to public policy. Biso asks this court for aid in enforcing an agreement intended to mislead prospective vendors of machinery and to induce them to advance credit on a false representation of assets — this against an innocent third party, the Bank. Biso admitted that he was aware of the impact upon the minds of the prospective vendors of machinery if the $15,000 Biso check to the order of Ponce Gas Works was shown to the vendors. The purpose, he admitted, was to mislead the prospective vendors as to the credit standing of Ponce Gas Works, i.e., “ It would show that they (Ponce Gas Works) had the money to use.” This seems to put these representations within the elements of section 952 of the Penal Law. Such facts alone warrant a denial of recovery to Biso (Reiner v. North Amer. Newspaper Alliance, 259 N. Y. 250, 260).
The complaint is dismissed.
This is the decision of the court pursuant to section 440 of the Civil Practice Act.
Settle judgment on notice.